UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>STM INDUSTRIES, INC.,<br><br>        Debtor. | Chapter 7<br><br>Case No. 04-12576-CJK |
| DONALD LASSMAN, as the duly-appointed Chapter 7 Trustee of STM Industries, Inc.,<br><br>        Plaintiff,<br><br>v.<br><br>CONTAINER RECYCLING ALLIANCE LP,<br><br>        Defendant. | Adv. Pro. No. 05-01344 |

**OPPOSITION OF DONALD LASSMAN TO MOTION OF CONTAINER RECYCLING ALLIANCE LP FOR WITHDRAWAL OF THE REFERENCE**

After defaulting on its lease obligations to STM Industries, Inc. ("STM") and leaving STM's property in shambles, Container Recycling Alliance LP ("CRA") now seeks to recover over $600,000 in claimed lost profits and relocation expenses from STM based on STM's alleged failure to make certain repairs to the property where CRA was formerly a tenant. CRA seeks this relief not by following the Bankruptcy Court's settled claims procedure, but by filing counterclaims against STM and seeking to have those claims heard in the District Court. Settled caselaw rejects this back-door attempt to obtain a piece of the bankruptcy estate. Rather, as is further set forth below, by filing its Answer and Counterclaims against STM in the Bankruptcy

B0419395v1

Court, CRA has waived its right to remove this case to the District Court; therefore, CRA's motion to withdraw the reference should be denied.[1]

## BACKGROUND

1. STM was in the business of leasing certain commercial property located in Holbrook, Massachusetts. On September 23, 1999, STM entered into a 10 year lease with CRA, a commercial recycler and majority owned subsidiary of Waste Management, Inc., for an industrial building located at 620 South Street, Holbrook, Massachusetts.

2. Four years into the term of the lease, CRA decided it was no longer content at the Holbrook facility and it eventually relocated to facility in Lakeville, Massachusetts. During its tenancy, however, CRA caused extensive damage to the South Street facility.

3. After CRA vacated the premises, STM (and later the Trustee) undertook its best efforts to lease the property, but it was unsuccessful in finding a replacement tenant. With its mortgage and other obligations compounding, STM was forced to seek bankruptcy protection.

4. On March 30, 2004 (the petition date), STM filed a Chapter 11 Voluntary Petition in the U.S. Bankruptcy Court for the District of Massachusetts. *See In re STM Industries, Inc.*, Case No. 04-12576-CJK.

5. On August 30, 2004, the Bankruptcy Court ordered that all proofs of claim against the estate of STM be filed by December 27, 2004. CRA did not, and to date has not, filed a proof of claim.

6. On January 14, 2005, the Trustee made a demand upon CRA for the damages STM incurred as a result of CRA's wrongful conduct. CRA rejected the demand.

---

[1] The Trustee also alleges that CRA's jury demand and counterclaims are improper and should be stricken pursuant to Fed. R. Civ P. 12, made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7012. In addition to raising this defense herein, the Trustee will move to obtain this relief when the time to respond to CRA's Counterclaims comes due.

7.  On May 9, 2005, this adversary proceeding was commenced in the Bankruptcy Court for the District of Massachusetts against CRA seeking to recover, on behalf of the estate of STM, for CRA's breach of the parties' commercial lease and for the damage CRA caused to the property while it was STM's tenant.

8.  On June 17, 2005, CRA responded to STM's Complaint by filing an Answer, Counterclaims, and Jury Demand in the Bankruptcy Court (Bankr. Ct. Docket # 5). CRA asserted three permissive pre-petition counterclaims against the estate of STM relating to its former tenancy: (1) breach of contract – failure to maintain property; (2) breach of contract – failure to maintain the structure of the building; and (3) constructive eviction. In its prayer, CRA requests that "this Court [*i.e.*, the Bankruptcy Court] enter judgment in CRA's favor and award damages" including "reasonable attorneys' fees, and costs incurred in this adversary proceeding …" Counterclaims, p. 13.

9.  The Counterclaims fail to state whether they constitute a core or non-core proceeding, as is required by Fed. R. Bankr. P. 7008 ("In an adversary proceeding before a bankruptcy judge, the … counterclaim … shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge."). Nevertheless, because the Counterclaims assert claims directly against the estate of STM, it is clear that they constitute core proceedings as defined by 28 U.S.C. § 157.

10. Immediately after CRA filed its Answer, Counterclaims, and Jury Demand, it filed the instant motion to withdraw the reference (Bankr. Ct. Docket #6). That motion is based on the contention that cause exists to withdraw the reference because CRA has demanded a jury trial in this adversary proceeding. *See* Motion for Withdrawal of Reference, ¶ 6. No such cause

B0419395v1

exists, however, because, by seeking affirmative relief against STM by way of filing permissive counterclaims in the Bankruptcy Court, CRA has waived any jury trial rights it may otherwise have had.

## ARGUMENT

### A. CRA HAS WAIVED ITS RIGHT TO A JURY TRIAL BY FILING COUNTERCLAIMS AGAINST STM

11. CRA's motion to withdraw seeks permissive withdrawal of the reference pursuant to 28 U.S.C. § 157(d), which provides, "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." *Id.* The party seeking to withdraw the reference bears the burden of proof. *See Segal v. California Energy Development Corp.*, 167 B.R. 667, 671-72 (D. Utah 1994).

12. CRA alleges that it is entitled to have the reference withdrawn (*i.e.*, the case transferred to the District Court) because it has a right to a jury trial on its claims and it does not consent to a jury trial before a bankruptcy judge. *See* Motion to Withdraw, ¶ 6.

13. CRA's theory, however, suffers from a fundamental defect – it can only obtain affirmative relief against STM in the Bankruptcy Court[2], yet by seeking such relief, it has consented to the claims process of the Bankruptcy Court and to the Bankruptcy Court's equitable jurisdiction.

14. Typically, the claims process in Bankruptcy Court is administered through the filing of proofs of claim. And as CRA concedes in its brief, a "creditor who files [a] proof of claim has brought itself within the equitable jurisdiction of the [bankruptcy] court and, therefore,

---

[2] *See Browner v. Rosen*, 56 B.R. 214, 216 (D. Mass. 1985) ("the sole remedy for asserting an affirmative right to monies owed by a bankrupt's estate, based on prepetition debt, is to file proofs of claim" in the Bankruptcy Court).

has waived its Seventh Amendment right to [a] jury trial." Motion to Withdraw, ¶ 8 (citing *Langekamp v. Culp*, 498 U.S. 42 (1990)).

15. What CRA fails to appreciate, however, is that even though it did not file a proof of claim against STM, it has filed the functional equivalent of a proof of claim by filing counterclaims against STM's estate. *See In re Lloyd Securities, Inc.*, 156 B.R. 750, 753 (Bankr. E.D. Pa. 1993) (recognizing the rule that "the filing of a counterclaim by a defendant-creditor in [an] ... adversary matter ... constitutes a relinquishment of the creditor's right to a jury trial because the creditor, in filing the counterclaim, is making a 'claim' against the estate which represents the creditor's consent to the equitable powers of the bankruptcy court"); *In re Warmus*, 276 B.R. 688, 693 (S.D. Fla. 2002) ("despite this conclusion that the counterclaim is compulsory, the claim nonetheless seeks damages from the bankruptcy estate. Therefore, the counterclaim is akin to the filing of a claim, and does act as a waiver as to the right to a jury trial").

16. And having filed a claim (*i.e.*, counterclaims) in the Bankruptcy Court, CRA cannot now withdraw the reference because it has invoked a core function of the bankruptcy court – the allowance and disallowance of claims. *See In re Barto Tech. Servs., Inc.*, 1996 WL 16664, at *5 (discussed below). *See also Segal v. California Energy Development Corp.*, 167 B.R. 667, 672-73 (D. Utah 1994) (denying a motion to withdraw the reference, finding that the filing of a counterclaim waives the right to a jury trial); *In re Schwinn Bicycle Co.*, 184 B.R. 945, 951 (Bankr. N.D. Ill. 1995) ("by filing her counterclaim, Campbell submitted to this Court's equitable jurisdiction and, under controlling Supreme Court precedence ... lost her entitlement to a jury trial in this preference action"); *In re Concept Clubs, Inc.*, 154 B.R. 581, 589 (D. Utah. 1993) ("this court concludes that an action for setoff raised as a counterclaim seeking affirmative

relief necessarily submits the claimant to the equitable jurisdiction of the bankruptcy court, thereby waiving the Seventh Amendment right to a jury trial"); *Bayless v. Crabtree*, 108 B.R. 299, 304-05 (W.D. Okla. 1989) (asserting a non-compulsory counterclaim waives the right to a jury trial), *aff'd* 930 F.2d 32 (10th Cir. 1991); *In re Allied Companies, Inc.*, 137 B.R. 919, 924 (S.D. Ind. 1991) (asserting a counterclaim constitutes an invocation of the bankruptcy court's equitable jurisdiction, thereby waiving the right to a trial by jury); *In re Robin Hood, Inc.*, 192 B.R. 124, 128 (W.D.N.C. 1995) ("when a creditor files a counterclaim against a debtor in response to an adversary proceeding brought in bankruptcy court, he has succumbed to the jurisdiction of that court and waived his right to a jury trial"). *Cf. In re Lloyd Securities, Inc.*, 156 B.R. 750, 753 (Bankr. E.D. Pa. 1993) ("an action for setoff raised as a counterclaim seeking affirmative relief necessarily submits the claimant to the equitable jurisdiction of the bankruptcy court, thereby waiving the Seventh Amendment right to a jury trial"). [3]

17.     Indeed, virtually identical circumstances were involved in *In re Barto Tech. Servs., Inc.* In that case, the debtor brought an adversary proceeding against Taylor-Winfield Corp. Taylor-Winfield responded by bringing a counterclaim for pre-petition contract damages, although it never filed a proof of claim – just as CRA has done in this case. *Id.* at 1996 WL 16664 at *3-*4. The implication of this conduct, the court found, was that "if it were successful in this litigation, Taylor-Winfield would have an allowed, liquidated claim against this estate …"

---

[3]     Although not dispositive, it bears noting that CRA's counterclaims against STM are permissive because they relate to pre-petition events, *i.e.*, STM's conduct under the parties' lease prior to STM filing for bankruptcy. Fed. R. Bankr. P. 7013 provides: "Rule 13 F. R. Civ. P. applies in adversary proceedings, *except that a party sued by a trustee* or debtor in possession *need not state as a counterclaim any claim that the party has against the debtor*, the debtor's property, or the estate, *unless the claim arose after the entry of an order for relief*." *Id.* (emphasis added). *See In re Barto Tech. Servs., Inc.*, 1996 WL 16664, *4 (Bankr. W.D. Pa. Jan. 16, 1996) ("only claims arising *postpetition* against a debtor, its property, or the estate must be raised as compulsory counterclaims. This claim arose prepetition and the counterclaim is not compulsory") (emphasis in original); *In re Lloyd Securities, Inc.*, 156 B.R. 750, 753 (Bankr. E.D. Pa. 1993) ("we observe that a creditor is not required to raise prepetition claims against the debtor as counterclaims").

*Id.* at *4. The court further noted that Taylor-Winfield could have defended against the action without filing counterclaims, and it could have liquidated its claim through its state court remedies. *Id.* By electing to pursue its claims by filing counterclaims, however, Taylor-Winfield submitted itself to the jurisdiction of the Bankruptcy Court. Specifically, the court held, "Taylor-Winfield chose to raise its claim in this court by filing a permissive counterclaim. In so doing, Taylor-Winfield ***has submitted to the jurisdiction of this court because the filing of the permissive counterclaim, in essence, invoked the claims allowance process***. The effect is the same as it would have been had Taylor-Winfield filed a formal proof of claim." *Id.* (emphasis added). Likewise here. By filing its permissive counterclaims against STM, CRA has invoked the Bankruptcy Court's claims allowance process, thereby waiving its right to a jury trial.

        18.    In responding to Taylor-Winfield's claim that it is entitled to a jury trial, the court examined *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), and *Langekamp v. Culp*, 498 U.S. 42 (1990) (the two Supreme Court cases CRA relies upon in its motion to withdraw), and concluded that, "***When the relief requested by the creditor would result in a distribution from the estate*** [(as is the case when a creditor files a counterclaim seeking affirmative relief)] ***the claims allowance process is triggered and the right to a jury trial is lost***." *Id.* at *5 (emphasis added). Nor should the result be any different, the court concluded, where (as in CRA's case) the counterclaim is asserted after the bar date. *Id.* at *6 ("This principle applies whether a permissive counterclaim is asserted before or after the claims bar date").

        19.    Because the facts of *In re Barto Tech Servs.*, are squarely on point with the facts of the instant case, the Court here should likewise conclude that, "[o]n the basis of *Langekamp*

and its progeny ... a creditor subjects itself to the jurisdiction of the bankruptcy court by filing a permissive counterclaim ... and no longer has the right to a jury trial." *Id.* at *7.

20. The case of *In re Lloyd Securities, Inc.*, is also on all fours with the present case. In that case, the adversary defendant, F. Emmet Ciccone, brought a counterclaim against the trustee's complaint seeking breach of warranty damages, demanded a jury trial, and filed a motion to withdraw the reference. 156 B.R. at 752. The court initially noted that "Ciccone would, but for the context of this proceeding as bankruptcy-related litigation, have a right to a jury trial at common law." *Id.* Nevertheless, because Ciccone elected to seek affirmative relief against the debtor/trustee arising from pre-petition conduct, the court concluded that Ciccone "waived his right to a jury trial ...." *Id.* at 754. This result was merited, the court found, even though Ciccone did not file a proof of claim by the bar date. *See id.* ("We recognize that the claims bar date in all of these cases has now run against Ciccone, and he can no longer raise the claims articulated in his Counterclaim through the claims process .... His assertion of this Counterclaim may violate the automatic stay and may for that reason ... be stricken.... Clearly, a creditor cannot hope to circumvent a bar date by raising claims subject to the bar date in a subsequent adversary proceeding.... However, we find that *a mere attempt to invoke this court's equitable 'claims resolution' process through assertion of a non-compulsory counterclaim, whether successful or not, is a sufficient act on the part of a creditor to eliminate its right to a jury trial*, because no such right exists in that process") (emphasis added). *Cf. Browner v. Rosen*, 56 B.R. 214, 216 (D. Mass. 1985) ("the sole remedy for asserting an affirmative right to monies owed by a bankrupt's estate, based on prepetition debt, is to file proofs of claim").

21. The above-rule was adopted in the First Circuit in *In re Northeastern Graphic Supply, Inc.*, 2003 Bankr. LEXIS 1585 (D. Me. Dec. 2, 2003). In that case, a plaintiff/debtor

sought to strike a jury demand based on the defendant having asserted counterclaims seeking affirmative recovery against the debtor's estate. *Id.* at *1. The court granted the request, holding that "Conseco's counterclaims, whether permissive or compulsory, implicate this court's claims-allowance function and transform the parties' dispute into an equitable one triable without a jury." Indeed, the court in *In re Northeastern Graphic Supply* cited *Roberds, Inc. v. Palliser Furniture*, 291 B.R. 102, 108 (S.D. Ohio 2003), and *Control Center, LLC v. Lauer*, 288 B.R. 269, 281 (M.D. Fla. 2002), for the proposition that this rule (known as the conversion rule) has been adopted by the "overwhelming majority of courts." *Id.* at n.9 and *14.

22.     The Court here should likewise adopt the prevailing conversion rule and hold that, by filing counterclaims against STM in the Bankruptcy Court, CRA's legal issues have been converted into equitable ones through CRA's act of seeking "a piece of the disputed res." *Id.* at *12 (citing *Murray v. Richmond Steel & Welding Co.*, 170 B.R. 868, 875 (E.D.N.C. 1994)).

## CONCLUSION

23.     Based on the above caselaw, it is clear that, by filing a permissive counterclaim, CRA has waived its right to a trial by jury and thus its motion to withdraw the reference lacks cause and should be denied.

B0419395v1

Respectfully Submitted,

DONALD R. LASSMAN, the duly-appointed
Chapter 7 Trustee of STM Industries, Inc.,

By his attorneys,

/s/ David Himelfarb
_____

Charles A. Dale III, BBO # 558839
cdale@ghlaw.com
Peter M. Coppinger, BBO # 554512
pcoppinger@ghlaw.com
Alex F. Mattera, BBO # 641760
amattera@ghlaw.com
David Himelfarb, BBO # 649596
dhimelfarb@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

Dated: June 27, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2005, I served a copy of this Opposition of Donald Lassman to Motion of Container Recycling Alliance LP for Withdrawal of the Reference through the Court's CM/ECF system and by first class mail, postage prepaid, on the following counsel:

Anthony M. Feeherry, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
*Counsel for Container Recycling Alliance LP*

By:   /s/ David Himelfarb
         David Himelfarb

-10-

B0419395v1