UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11451-GAO

CONTAINER RECYCLING ALLIANCE,
Plaintiff

v.

DONALD R. LASSMAN,
Defendant.

MEMORANDUM AND ORDER
February 6, 2007

O'TOOLE, D.J.

Donald R. Lassman is the Chapter 7 Trustee for the debtor STM Industries, Inc. ("STM") in a pending bankruptcy case, In re STM Indus., Inc., Bankruptcy Docket No. 04-12576-RS. He commenced an adversary proceeding on behalf of STM against Container Recycling Alliance LP ("CRA") for damages under several different state law theories. CRA answered and counterclaimed and has moved to withdraw the reference pursuant to 28 U.S.C. § 157(d). For the reasons set forth in this memorandum and order, the motion is GRANTED.

STM's claims against CRA arise out of a commercial lease. According to the complaint, in September 1999, STM leased to CRA industrial premises located in Holbrook, Massachusetts. The lease was for a term of ten years, but it also gave CRA the right to terminate the lease at the end of the first five years upon twelve months notice and payment of a penalty equal to two months rent. Approximately four years into the lease term, CRA vacated the property and stopped paying rent, asserting that the premises were unfit for CRA's commercial use and occupancy because of health and safety problems with the building. After CRA vacated the premises, STM's efforts to relet the property were unsuccessful.

STM filed a voluntary Chapter 11 petition in March 2004, which has since been converted to a Chapter 7 proceeding. The bankruptcy court ordered that all proofs of claim against the debtor's estate be filed by December 27, 2004. CRA did not file a proof of claim.

In January 2005, Lassman, as trustee for STM, made demand upon CRA for the damages arising from CRA's alleged breach of its lease obligations. CRA rejected the demand. Lassman then initiated the adversary proceeding at issue against CRA, asserting four causes of action: (1) breach of contract – failure to pay rent; (2) breach of contract – damage to the premises; (3) indemnification; and (4) breach of the implied covenant of good faith and fair dealing. CRA answered the complaint, raising six affirmative defenses, including setoff, and asserting three counterclaims against STM: (1) breach of contract – failure to maintain property; (2) breach of contract – failure to maintain the structure of the building; and (3) constructive eviction. CRA also claimed a jury trial.

CRA then moved to withdraw the reference. Pursuant to 28 U.S.C. § 157(d), a district court may withdraw the reference of a matter to the bankruptcy court "for cause shown." CRA contends that cause exists for withdrawal of the reference as to the adversary proceeding because it has demanded a jury trial and has not consented to such a trial in the bankruptcy court. STM counters that CRA lost any right to a jury trial it may have had when it filed counterclaims against STM and therefore, with no prospect of a jury trial, there is no cause to withdraw the reference.

**Background: Withdrawal of a Reference**

District courts have original jurisdiction over cases arising under the Bankruptcy Code. This Court has exercised its authority under 28 U.S.C. § 157(a) to refer all bankruptcy matters in the first instance to the district's bankruptcy judges. See D. Mass. Local Rule 201. Nevertheless, pursuant to 28 U.S.C. § 157(d), the district court may "withdraw, in whole or in part, any case or proceeding referred under . . .[§ 157(a)], on its own motion or on timely motion of any party, for cause shown."

2

Withdrawal is an exception to the general rule that bankruptcy proceedings should be adjudicated in the bankruptcy court. Consequently, the power to withdraw a reference should be used only if it is "essential to preserve a higher interest." Gray v. Solvay Polymers, Inc. (In re Dooley Plastic Co., Inc.), 182 B.R. 73, 80-81 (D. Mass. 1994); see also FTC v. Am. Inst. for Research and Dev., 219 B.R. 639, 647 (D. Mass. 1998) ("[W]ithdrawal of a reference is to be reserved for an unusual circumstance."). Accordingly, courts are generally cautious in applying § 157(d), "so that the exception does not swallow the rule." United States v. Kaplan, 146 B.R. 500, 502-03 (D. Mass. 1992).

What constitutes "cause" justifying withdrawal is not defined by the statute. One circumstance where courts have found good cause to withdraw a reference is where a party has a right to a jury trial as to a pending issue and refuses, as it may, to have the bankruptcy court conduct the jury trial. See Nickless v. Creare, Inc. (In re Haverhill Tech. Group), 310 B.R. 478, 481 n. 7 (Bankr. D. Mass. 2004) ("Because the Defendants do not consent to a jury trial in this Court, the adversary proceeding must be tried in the district court."); see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993); NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.), 203 B.R. 905, 908 (D. Del. 1996). That certainly makes sense. The right to a jury trial is an important right, and if it can be vindicated fully only by withdrawal of the reference, then surely there is good cause for the withdrawal. Accordingly, if CRA is entitled to a jury trial conducted by the district court, and if it has not waived or otherwise lost that right, its motion for withdrawal should be granted.

### **Background: The Right to a Jury Trial**

Two Supreme Court cases provide relevant guidance. In Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), the Court outlined a three-part test for determining when the right to a jury trial

3

exists in the bankruptcy context. Courts must consider (1) whether the party seeking a jury trial would be entitled to one at common law; (2) whether the remedies sought are legal rather than equitable in nature; and, if the first two prerequisites are met, (3) whether Congress has withdrawn jurisdiction over that type of action from courts of law and assigned it exclusively to non-Article III tribunals sitting without juries. Id. at 42. In Langenkamp v. Culp, decided the following term, the Court held, emphasizing parts two and three of the Granfinanciera test, that creditors who had filed proofs of claim against a debtor's estate had submitted those claims to the equitable jurisdiction of the bankruptcy court. See 498 U.S. 42, 44 (1990). Consequently, when the trustee later brought a related preference action against them, the creditors were not entitled to a jury trial. See id. at 45.

In each case, the critical determinant of the outcome was whether the party claiming a jury trial had invoked the claims allowance process of the bankruptcy court by filing a claim against the estate. In Granfinanciera, the party insisting on a jury trial had not filed a claim against the debtor's estate, and the Court emphasized that fact in concluding that the party retained the right to a jury as to a legal claim against it by the trustee. Id. at 58 ("[A] creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate. . . ."). Contrariwise, in Langenkamp, the parties claiming a right to a jury trial as to a preference action by the trustee had previously filed proofs of claim against the estate, "thereby bringing themselves within the equitable jurisdiction of the Bankruptcy Court," with the consequence that they were not entitled to a jury trial. Langenkamp, 498 U.S. at 45. Taken together, the two cases establish that if a creditor files a claim against the estate, it loses any right to insist on a jury, not only as to its claim, but also as to claims by the trustee against it; if the creditor has not filed a claim, it can insist on a jury for legal claims asserted against it by the trustee. In the simplest case, it is a straightforward

rule indeed: the court is merely required to determine whether the party claiming a jury trial has filed a claim or not.

But suppose a party does not file a claim against the estate, is later sued by the trustee, and then counterclaims. Is the counterclaim an invocation of the claims allowance process equivalent to the actual filing of a proof of claim for purposes of the Granfinanciera/Langenkamp rule of decision? Neither case answers the question, because both apparently were speaking only of formal proofs of claims submitted directly in the claims allowance process. Since those cases were decided, however, some lower courts have concluded that the filing of a counterclaim, even a compulsory counterclaim, in an adversary proceeding does invoke the claims allowance process sufficiently to bar the counterclaimant from seeking a jury trial on the issues raised by both the counterclaim and the trustee's initial adversary claim. See, e.g., Northeastern Graphic Supply, Inc. v. Net 2 Press, Inc.( In re Northeastern Graphic Supply, Inc.), 2003 WL 22848944 at *5 (Bankr. D. Me. 2003) (holding that "counterclaims, whether compulsory or permissive, implicate [the bankruptcy] court's claims-allowance function and transform the parties' dispute into an equitable one triable without a jury"); Leshin v. Welt (In re Warmus), 276 B.R. 688, 693 (S.D. Fla. 2002) ("[D]espite this conclusion that the counterclaim is compulsory, the claim nonetheless seeks damages from the bankruptcy estate. Therefore, the counterclaim is akin to the filing of a claim, and does act as a waiver as to the right to a jury trial."). Other courts have drawn a distinction between compulsory counterclaims and permissive counterclaims, concluding that the assertion of a permissive counterclaim extinguishes any right to a jury, while the assertion of a compulsory counterclaim does not. See, e.g., Beard v. Braunstein, 914 F.2d 434, 442 (3d Cir. 1990) (holding that the defendant in the adversary proceeding had not waived its right to a jury trial by filing a compulsory counterclaim and distinguishing the case from one where the defendant filed a permissive counterclaim); Shields v. Ciccone (In re Lloyd

5

Securities, Inc.), 156 B.R. 750, 751 (Bankr. E.D. Pa. 1993) (concluding that, because the counterclaim filed by the defendant was not a compulsory counterclaim, it was the equivalent of voluntarily filing a proof of claim against the estate, which worked a waiver of the right to a jury trial),[1] and at least one case has concluded that the filing of permissive counterclaims did not work a waiver of any right to jury trial, see NDEP Corp., 203 B.R. 905.

**The Present Case**

The claims brought by Lassman on behalf of the debtor and the claims filed in response by CRA are all legal in nature: both sides assert breach of contract claims, to which Lassman adds claims for indemnification and breach of the covenant of good faith and fair dealing, and CRA adds a claim for constructive eviction. Moreover, the remedy sought by each side – monetary damages – is legal, not equitable. If CRA had elected simply to defend the trustee's claims, there would be no question that CRA would be entitled to a jury trial. See Granfinanciera, 492 U.S. at 47-49. The issue is whether that is changed by CRA's assertion of counterclaims.

As evidenced by the cases discussed above, many of the courts that have relied on the rationale of Granfinanciera and Langenkamp to hold that a defendant in an adversary action loses its right to a jury trial by asserting a counterclaim have analyzed, in great detail, whether the counterclaim asserted was permissive or compulsory. Regardless of the ultimate characterization of the counterclaim, however, the courts' chief concern has been whether the counterclaimant was

---

[1] For these courts, it becomes necessary to determine whether a counterclaim is properly characterized as compulsory or permissive. This task can be complicated because some claims that may be compulsory under the Fed.R.Civ.P. 13 would be considered permissive under Bankruptcy Rule 7013. See NDEP Corp., 203 B.R. 909-10 (explaining that under Bankruptcy Rule 7013, a party need not file a counterclaim against the debtor "even if it would have been compulsory under Fed. R. Civ. P. 13(a) 'unless the claim arose after the entry of an order for relief.'"(quoting Bankr. R. 7013)).

6

seeking to achieve an affirmative recovery from the estate by circumventing the bankruptcy court's formal claims allowance procedure. This concern is articulated in great detail in Commercial Financial Services., Inc. v. Jones (In re Commercial Fin. Servs., Inc.), 251 B.R. 397 (Bankr. N.D. Okla. 2000), where, in his answer to the bankruptcy trustee's turnover action, one Jones asserted an affirmative defense of set-off and recoupment.  Rejecting his argument that his affirmative defense was not a "claim" because he sought only to reduce or eliminate the estate's recovery against him, the court concluded that his defense asserted "a claim against the estate's right to recover from [him], which itself [was] property of the estate." Id. at 405.  The court then stated that it "fail[ed] to see a distinction between obtaining something of value from the estate by filing a claim and obtaining something of value from the estate . . . by asserting setoff as a defense," id. at 407, and expressed a concern that the setoff defense would "reduce the recovery [the estate] would obtain for distribution to unsecured creditors," id. at 406.  See also Northeastern Graphic Supply, 2003 WL 22848944 at *5 (holding that the defendant lost its right to a jury trial by filing a counterclaim that sought a piece of the disputed res).[2]

There is a decisive difference between this case and those bankruptcy cases canvassed above that have concluded that a defendant's assertion of counterclaims against an estate vitiates the

---

[2] In support of its holding, the court quoted Murray v. Richmond Steel & Welding Co. (In re Hudson), 170 B.R 868, 875 (E.D.N.C. 1994) where the court stated:
> In short, the defendant did not lose its right to a jury trial by filing a counterclaim and thereby waiving the right. Instead, the defendant lost its right to a jury trial by filing a counterclaim and thereby seeking a piece of the disputed res, the debtors' estate, which was subject to the bankruptcy court's equitable power to allow and disallow claims. Regardless of whether the counterclaim was permissive or compulsory, it represented the defendant's attempt to obtain a portion of the debtors' estate. As a result, it was a claim against the estate, and it triggered the non-jury, public rights process of allowing and disallowing claims in the bankruptcy court.

7

defendant's jury trial rights. Here, CRA has renounced any affirmative recovery on its counterclaims, saying that it asserts them only to reduce any recovery against it by the trustee on the trustee's claims in the adversary proceeding.[3] Viewing a "claim" against the estate as an attempt to achieve some payout from the assets of the estate – a piece of the disputed res – CRA argues it has made no "claim" against the estate within the meaning of Granfinanciera and Langenkamp, even as those holdings have been (arguably) extended by decisions in lower courts.[4]

The waters are muddied, however, by CRA's perhaps understandable but nonetheless infelicitous use of the term "setoff" to describe the objective of its counterclaims. Given the particular facts of this case, the proper term to have used is "recoupment." Attend to this nutshell explanation of the difference by then-Chief Judge Breyer, speaking for the First Circuit:

> The law dictionary defines a "setoff" as a "counter-claim demand which defendant holds against plaintiff, arising out of a transaction *extrinsic to plaintiff's cause of action.*" . . . "Recoupment," on the other hand, is "a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant *arising out of the same transaction.*" . . .
>
> This distinction, although somewhat technical, is well established in the law.

---

[3] This important limitation is not found in CRA's answer and counterclaim as originally filed but instead asserted only after the parties began exchanging arguments on the issue of the withdrawal of the reference. Nevertheless, Lassman need not fear that CRA's disclaimer of affirmative relief will prove evanescent. This Court can and will hold CRA to its concession.

[4] Lassman contends that the purported limitation of the counterclaims to defensive effect and renunciation of any affirmative recovery comes too late, the invocation of the claims allowance process, and thus the conversion of the claims into equitable ones *a la* Langenkamp, having decisively occurred when the unqualified counterclaims were first presented. Paraphrasing, CRA has touched pitch with its counterclaims and is thus forever defiled as far as hopes for a jury are concerned. This seems rather too formalistic a position to take for a party who also argues that the concept of a "claim" should be given an expansive substantive meaning, not just a formal one.

8

> This technical legal terminology does not necessarily reflect ordinary usage. . . . Lawyers, too, might fall into this manner of speaking, for often the technical legal distinction does not matter. . . . In a few specialized circumstances, however, the difference takes on more significance.
>
> One such circumstance is bankruptcy. . . .
>
> Recoupment, [unlike setoff], is not a mechanism which reduces mutual debts "for the sake of convenience," but rather is "in the nature of a defense" and is intended to "permit . . . judgment to be rendered that does justice in view of the one transaction as a whole." As such, when a debtor in bankruptcy seeks to recover from a creditor whose claim against the debtor arises out of the same transaction, allowing the creditor to recoup damages simply allows the debtor precisely what it is due when viewing the transaction "as a whole."

United Structures of Am., Inc. v. G.R.G. Eng'g, S.E, 9 F.3d 996, 998-99 (1st Cir. 1993) (citations omitted) (emphasis in original); see also Fed. Deposit Ins. Corp. v. Kooyomjian, 220 F.3d 10, 14 (1st Cir. 2000) ("Recoupment 'allows a defendant to "defend" against a claim by asserting—up to the amount of the claim—the defendant's own claim against the plaintiff growing out of the same transaction.'" (quoting Bolduc v. Beal Bank, SSB, 167 F.3d 667, 672 (1st Cir. 1999))).

In the present case, the debtor's claims and CRA's counterclaims arise out of the same transaction – the commercial lease. Lassman alleges that CRA breached the lease agreement with STM by failing to pay rent and causing damage to the premises. In turn, CRA asserts that it stopped paying rent after STM breached the lease agreement by failing to maintain the property properly, and that CRA incurred damages as a result of STM's breach. By the counterclaims, CRA proposes to deduct from any debt it owes on the STM claims whatever amount STM may justly owe to CRA on the counterclaims so that, in the end, STM may recover "precisely what it is due when viewing the transaction 'as a whole.'" United Structures, 9 F.3d at 999 (citation omitted). That CRA uses the

incorrect technical term for the means available to achieve that substantive end ought not be determinative of the parties' rights.

It is true in a broad sense that recoupment involves the prosecution of "claims" against the debtor so as to reduce the amount the trustee might otherwise recover on his claims against the defendant. However, reducing the trustee's claims to the amount that he justly ought recover when the transaction is viewed as a whole is more properly seen as part of the process of ascertaining the true value of the estate, not as an attempt to obtain a distribution from it.[5] After all, a successful defense on the merits of the trustee's claim would have the same effect of reducing the value of the estate by denying it a damage award it had claimed, but to which it might not legally be entitled. If that is true, then under Lassman's view, merely mounting a defense to a trustee's adversary action would have to be characterized as invoking the claims allowance and disallowance process.[6] Granfinanciera holds otherwise, see 492 U.S. at 36, 64, and in so doing emphasizes the need to strike the proper balance between the efficient functioning of the bankruptcy system and the protection of the constitutionally guaranteed right to a jury trial. See id. at 63 ("It may be that providing jury trials in some . . . actions . . . would impede swift resolution of bankruptcy proceedings. . . . But 'these considerations are insufficient to overcome the clear command of the Seventh Amendment.'" (footnote omitted).

---

[5] As the court cautioned in Commercial Financial Services, "[r]egardless of the disguise under which a claim is asserted . . ., the Court must look to the substance of the assertion to determine whether the claims allowance process has been invoked." Id. at 408.

[6] To the extent that this was the view of the bankruptcy judge in Commercial Financial Services, 251 B.R. 397, I respectfully disagree with that view. A claim made by the trustee that has no merit and ought in justice be defeated should not be considered to hold any value for the estate.

10

**Conclusion**

CRA has filed no proof of claim in the STM bankruptcy proceedings. The trustee's claims against CRA, as set forth in the complaint in the adversary proceeding, are paradigmatically legal in nature and seek money damages. They are precisely the types of claims to which the right to jury trial under the Seventh Amendment typically attaches, and do not themselves invoke the claims allowance process of the bankruptcy court. On those claims standing alone, CRA would be entitled to a jury trial. See Granfinanciera, 492 U.S. at 36. By asserting legal counterclaims in the adversary proceeding, CRA prompted two questions: first, whether it was making claims against the estate, and second, if so, whether it therefore had submitted itself to the equitable jurisdiction of the bankruptcy court and lost its right to a jury trial as a result. See Langenkamp, 498 U.S. at 45.

Because the claims of the opposing parties arise out of the same commercial transaction, and because CRA has disclaimed any affirmative recovery, the counterclaims are properly viewed as claims for recoupment, more or less in the nature of a defense, see United Structures, 9 F.3d at 999, regardless of the label applied to them by either party. By their very nature, such claims have the limited purpose of assuring that money the estate owes the defendant arising from the same transaction is taken account of, and deducted from, any amounts the defendant owes the estate, so that it can be determined what the estate is justly owed on the transaction as a whole. See id.

In sum, where the defendant in an adversary action initiated by a bankruptcy trustee has not filed a proof of claim but asserts claims for recoupment once sued, the defendant does not seek an affirmative recovery from the estate, but rather a fair accounting of the amount the estate is entitled to based on the resolution of a single, disputed, underlying transaction. The defendant is not asserting a claim against the debtor's estate as contemplated in either Granfinanciera or Langenkamp, and thus the defendant's right to a jury trial is unaffected.

Consequently, CRA has a right to a jury trial as to the issues in the adversary proceeding, including the recoupment counterclaims. The existence of the right to a jury trial and CRA's refusal to have that trial conducted by a bankruptcy judge combine to provide cause for allowing the motion to withdraw the reference, and the motion is therefore GRANTED.

It is SO ORDERED.

|  |  |
|---|---|
|    February 6, 2007 |    /s/ George A. O'Toole, Jr. |
| DATE | DISTRICT JUDGE |